UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:05-CR-51 |
| | ) | |
| EUGENE SINGLETON | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Presently before the court is Defendant Eugene Singleton's ("Singleton's") Second Motion to Withdraw Guilty Plea filed on September 27, 2006. The Government responded on October 27, 2006 to which the defendant replied on November 14, 2006. Thereafter, on December 27, 2006, the court held an evidentiary hearing on this motion and ordered the parties to file supplemental briefs in support of their respective positions. The final brief was filed on January 22, 2007. For the following reasons, Singleton's Motion will be GRANTED.

## FACTUAL BACKGROUND

In 2004, a federal jury convicted Singleton of possession of cocaine base "crack" and the undersigned imposed a sentence of 21 months. (*See United States v. Singleton*, 1:03-CR-43). After serving the majority of his sentence, the Bureau of Prisons (BOP) assigned Singleton to PACT BRADLEY, a half-way house facility located in Michigan City, Indiana. Nine days before his scheduled release from that facility, Singleton left and did not return. After a warrant was issued for his arrest, Singleton was arrested in a hotel room in New Haven, Indiana. In the hotel room where Singleton was arrested were controlled substances including cocaine base "crack," marijuana,

1

and oxycodone pills, as well as drug paraphernalia and guns. Subsequent to his arrest, a federal grand jury indicted Singleton on charges of escape, 18 U.S.C. §751; possession with intent to distribute controlled substances including more than 5 grams of crack cocaine, 21 U.S.C. §841; and felon in possession of a firearm, 18 U.S.C. §922(g)(1).

On October 20, 2005, Singleton pled guilty pursuant to a written plea agreement ("the Agreement") to Count 2. Singleton's change of plea was entered on the record in open court before Magistrate Judge Roger Cosbey pursuant to a Fed.R.Cr.P. 11 colloquy. In the Agreement, Singleton agreed to plead guilty to count 2 in exchange for the Government's agreement to (1) dismiss the remaining counts at the time of sentence; (2) recommend the low-end of the advisory guideline range; (3) forego the filing of a §851 enhancement based upon Singleton's prior felony drug conviction; and (4) recommend that Singleton receive acceptance of responsibility deductions. The Agreement also specifically provides that the amount of cocaine base "crack" was more than 5 grams but less than 50. Paragraph 7 of the Agreement sets forth the maximum term of imprisonment for the offense, in this case, 5 to 40 years imprisonment and the maximum supervised release term. The Agreement expressly states: "defendant also understands that no one can predict the precise sentence that will be imposed, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for his offense(s) as set forth in this Plea Agreement." (Plea Agreement, ¶12(e)).

A review of the transcript of the plea hearing further demonstrates that Singleton was advised of the nature of the charges against him, his constitutional rights to a trial by jury (which he agreed to waive), as well as the statutory penalties for the offense to which he was pleading guilty. (Tr. Plea Hearing, pp. 14-16). As to the voluntary and knowing nature of the plea, the Magistrate questioned

2

Singleton in detail about the substance of the Agreement and Singleton's knowledge of the terms of the Agreement. (*Id.* at 16-19).

In light of Singleton's answers to the colloquy, the Magistrate entered a report and recommendation recommending that a judgment of guilty be entered on the plea. On November 8, 2005, the undersigned entered an Order Adopting the Report and Recommendations (Docket #30) and accepting the plea of guilty to Count 2. At the sentencing hearing, Singleton expressed dissatisfaction with his counsel, William Lebrato ("Lebrato") and Lebrato moved to withdraw from the case. Thereafter, new counsel was appointed and Singleton filed his first motion to withdraw his guilty plea.

In his initial motion, Singleton asserted that because Lebrato predicted that his sentence pursuant to the plea agreement would be 92 months when, in fact, Singleton has been classified as a career offender facing a substantially higher sentence of 188 to 235 months, he should be permitted to withdraw his guilty plea. After review of the guilty plea transcript as well as the applicable case law, this Court concluded that even assuming Singleton's counsel erred in predicting his sentence, Singleton was made aware in both the plea agreement and during the plea colloquy that his sentencing exposure could reach up to the maximum possible punishment under the law.

Singleton then filed the present motion asserting that he received ineffective assistance of counsel prior to pleading guilty.[1] At the evidentiary hearing, the sole evidence presented was the testimony of Singleton who described the events leading up to his guilty plea as follows: Singleton

---

[1] The Court requested the Probation Department to prepare a summary of the sentence Singleton could potentially receive if he succeeds with this motion, proceeds to trial, and is convicted. Singleton was advised at the evidentiary hearing that his potential exposure is 360 months to life. The Court then gave Singleton time to review his potential exposure, consult with his attorney, and decide whether to proceed with this motion. Singleton has decided to proceed.

3

first met Lebrato at his Initial Appearance on August 10, 2005. (Tr. Evidentiary Hearing, p. 7). On that day, Singleton told Lebrato that he did not think the police had probable cause to search the hotel room and asked Lebrato to look into it. (*Id.* at 8). There was no further communication between Lebrato and Singleton until the Arraignment on August 23, 2005. (*Id.* at 8). There, Lebrato spoke to Singleton about the probable cause issue and indicated the police did not need probable cause to search the hotel room because Singleton's girlfriend, who was in the room when Singleton was arrested, had consented to the search. (*Id.* at 8). Singleton advised Lebrato that his girlfriend did not consent to the search and gave Lebrato her address and telephone number to investigate. (*Id.* at 8). Lebrato never spoke with Singleton's girlfriend nor did he file any pretrial motions on Singleton's behalf. (*Id.* at 13, 16).

Singleton testified that Lebrato never contacted him between the Arraignment, August 23, 2005, and the Pretrial Conference held on October 18, 2005. (*Id.* at 9). At the Pretrial Conference, Lebrato placed the Plea Agreement in front of Singleton, briefly explained it, and told Singleton he could plead guilty that same day. (*Id.* at 9, 14). Singleton hesitated because he had not seen his discovery. (*Id.* at 10). Lebrato mentioned that the Government may charge Singleton's girlfriend if he did not plead guilty. (*Id.* at 15). Still, Singleton was not comfortable pleading guilty that day so the Magistrate continued the proceedings until October 20, 2005. (*Id.* at 11).

On October 19, 2005 Singleton received a letter dated that same day from Lebrato explaining the impact of the plea agreement. (*Id.* at 11). It stated that Singleton would have to serve a minimum of 92 months but not more than 115 months. (*Id.* at 15-16). Included with the letter was

4

Singleton's discovery.[2] (*Id.* at 12). Singleton had approximately three hours to review his discovery at the jail before having to appear in court the next morning.[3] (*Id.* at 12).

Singleton appeared in court for his Change of Plea Hearing on October 20, 2005. (*Id.* at 13). Lebrato did not discuss the discovery material with Singleton at any time. (*Id.* at 13). Singleton did not want to plead guilty on October 20, 2005 because he did not have adequate time to consider his options, however, he pled guilty because he "didn't want to play with the Court's time." (*Id.* at 14).

On cross-examination, Singleton conceded that during the Rule 11 colloquy he represented that he was satisfied with his attorney's representation, he was not induced to plead guilty by any promises of a particular sentence, and no one threatened or forced him to plead guilty. (*Id.* at 20).

## **DISCUSSION**

Singleton contends that he should be allowed to withdraw his guilty plea because Lebrato provided ineffective assistance prior to his guilty plea rendering the guilty plea involuntary. Singleton bases his claim of ineffective assistance of counsel primarily on the fact that the only communication between Singleton and Lebrato occurred in the courtroom prior to court proceedings and through one letter, and that Lebrato never investigated facts Singleton provided to him relating to the search of the hotel room. Singleton also supports his motion to withdraw his guilty plea with three additional facts: (1) Lebrato falsely promised Singleton that his federal sentence would be between 92 and 115 months when, in reality, he is a career offender facing 188 months at the low-end of the guideline range, (2) Singleton received his discovery on October 19, 2005 even though

---

[2] Singleton testified that he did not receive his discovery until he requested it in October 2005 even though the discovery was dated August 2005.

[3] Singleton testified that the mail was not distributed at the jail until 6:00 p.m. approximately three hours before lights out.

5

it was dated in August 2005, and he only had three hours to review it, and (3) Singleton believed if he did not take the plea, his girlfriend would be charged.

The Government contends that Singleton is using the same type of claims to support this motion as he did in his initial motion to withdraw his guilty plea and thus, the present motion should be denied for the same reasons as the first. This, however, is an inaccurate characterization of the record Singleton has now proffered in support of his present motion. While it is true that part of Singleton's argument in support of this motion is the same as the last, namely his allegation that Lebrato inaccurately predicted his sentence, the thrust of the present motion is that the cumulative effect of Lebrato's errors, including his lack of contact with Singleton and his failure to investigate the facts provided by Singleton as to the search of the hotel room constitutes ineffective assistance of counsel rendering his guilty plea involuntary.

A court may allow a defendant to withdraw a guilty plea after it has been accepted, but before sentence is imposed if the defendant presents a "fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The burden is on the defendant to demonstrate a fair and just reason for plea withdrawal. *United States v. Milquette*, 214 F.3d 859, 861 (7th Cir.2000). "One 'fair and just' reason for withdrawing a plea is where that plea was not voluntarily made." *United States v. Ellison*, 835 F.2d 687, 692-93 (7th Cir.1987). A guilty plea is rendered involuntary by ineffective assistance of counsel. *United States v. Carroll*, 412 F.3d 787, 793 (7th Cir.2005).

To establish ineffective assistance of counsel "[i]n the plea bargain context a defendant must establish that his counsel's performance was objectively unreasonable and that but for counsel's errors, he would not have pleaded guilty and instead gone to trial." *United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir.1999), citing *Hill v. Lockhart*, 474 U.S. 52, 56-60 (1985). To satisfy the

6

performance prong, the defendant must point the court to specific acts or omissions which shape his claim. *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir.1995). "[E]ven if individual acts or omissions are not so grievous as to merit a finding of incompetence or of prejudice from incompetence, their cumulative effect may be substantial enough to meet the *Strickland* test." *Crisp v. Duckworth*, 743 F.2d 580, 583 (7th Cir.1984). Once a court has set out counsel's errors, "the court must then determine whether, in light of all the circumstances, the alleged acts or omissions were outside the wide range of professionally competent assistance." *Id.* The court must keep in mind the strong presumption that counsel's performance was reasonable while making this determination. *Id.* To show prejudice, a defendant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill,* 474 U.S. 52, 59 (1985).

Mindful of these legal principles, the court turns now to an assessment of Singleton's motion.

### Performance

As indicated above, Singleton contends that counsel's performance was deficient for at least five reasons and that the combination of these reasons, not any one in and of itself, is sufficient to show defective performance under *Strickland*. In response, the Government has set out numerous cases relating to three of the grounds provided by Singleton which demonstrate that individually the ground is insufficient to show defective performance. For instance, the Government asserts that an attorney's inaccurate prediction of a potential sentence, standing alone, is insufficient to establish deficient performance by the defendant's attorney. *Bethel v. United States*, 458 F.3d 711, 717 (7th Cir.2006). Likewise, the Government points out that Singleton's plea is not rendered involuntary simply because counsel did not provide him with discovery until the day before the change of plea

7

hearing since "a guilty plea entered by a defendant who does not see the prosecutor's hand in advance will still be voluntary ...if the plea follows disclosure of an adequate factual basis." *United States v. Underwood*, 174 F.3d 850, 854 (7th Cir.1999).  Finally, the Government indicates that Singleton's contention that he believed his girlfriend would be charged if he did not plead guilty, directly contradicts his assertions made at the Rule 11 hearing, and "representations made at a Rule 11 hearing are accorded a 'presumption of verity.'" *United States v. Schuh*, 289 F.3d 968, 975 (7th Cir.2002).

What is conspicuously absent from the Government's argument, however, is any mention of the two key grounds cited by Singleton in his motion, i.e. that Lebrato failed to adequately communicate with Singleton regarding his case or his guilty plea and Lebrato's failure to investigate the facts of the hotel search as set out by Singleton.          Singleton testified that but for a few minutes prior to each court proceeding he had no opportunity to consult with Lebrato regarding his case.  Moreover, as it relates to his guilty plea, Singleton stated that Lebrato, in essence, dropped the plea agreement on his lap and told him to enter a guilty plea.  While it is true that no case establishes "a  minimum number of meetings between counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel," *United States ex rel. Kleba v. McGinnis*, 796 F.2d 947, 954 (7th Cir.1986), here the only evidence before this court is that there was very limited communication between counsel and client.  And, while an experienced lawyer "can get more out of one interview with a client than a neophyte lawyer could get out of a similar meeting.," *Id.*, there is no evidence that Lebrato's experience as a criminal attorney guided his decision to have such limited contact with Singleton.  Moreover, the court takes judicial notice of its own records which reveal that in the 6 years preceding Lebrato's representation of Singleton, he

8

appeared in only 9 cases in this court or, slightly more than one case per year. The court cannot conclude on this record that Lebrato's minimal contact with Singleton was "strategic" or justified by his vast experience in federal criminal litigation.

In addition to his lack of contact with Singleton, Lebrato also failed to follow-up on information supplied by Singleton as to the search of the hotel room which led to his arrest. Certainly, "an ineffective assistance of counsel claim cannot rest upon counsel's alleged failure to engage in a scavenger hunt for potentially exculpatory information with no detailed instruction on what this information may be or where it might be found. " *United States v. Farr*, 297 F.3d 651, 658 (7th Cir.2002). But here, Singleton provided Lebrato with his girlfriend's name, phone number, and address. He also told Lebrato that his girlfriend did not consent to the search of the hotel room, which was potentially critical information to support a motion to suppress. Lebrato did not have to engage in a "scavenger hunt," to uncover information to support the motion to suppress. Rather, he merely could have followed up on the information provided by Singleton as Singleton requested him to do. By refusing to do what was requested by his client on such a fundamental matter, this court concludes that Lebrato violated a basic duty of an attorney to his client. *Dando v. Yukins,* 461 F.3d 791, 799 (6th Cir., 2006) (finding that despite deference afforded counsel, where a failure to investigate does not reflect sound professional judgment, such deference is not appropriate.); *see also, O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir.1994) ("counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary") (quoting *Strickland,* 466 U.S. at 690-91).

It is also critical to note that this is not Singleton's first stint before this court. At the time of his arrest, Singleton was at the tail end of his federal sentence for drug possession and had

9

escaped from a half-way house where he had only nine days left to serve. Without knowing any more facts than this, it is difficult to discern that counsel would not have considered that Singleton's sentencing exposure could be affected by the prior conviction and that perhaps, the career offender sentencing regime could be triggered. There is nothing in the record or in the communication between Lebrato and Singleton demonstrating that counsel so much as considered the career offender possibility in Singleton's case. Given the unique facts of this case, that too was error.

In sum, the court, after a thorough review of the record, concludes that the combination of counsel's errors were far enough outside the range of behavior that reasonably could be expected by a client so as to constitute defective performance. In concluding as the court does, it is not unaware that courts are typically required to show heightened deference to an attorney's strategic decisions supported by professional judgment. The evidence suggests that the attorney's decisions in this case were not an exercise in professional judgment at all for it appears that he had the most minimal of contact with his client, ignored the request from his client to determine whether the information provided by Singleton supported a motion to suppress, failed to consider the impact of his prior federal sentence on the sentencing guidelines, and essentially handed him a plea agreement without much in the way of explanation of the consequences of that plea. Under such circumstances, counsel's performance fell below the minimal range of competent performance expected by counsel and thus, Singleton has established defective performance.

### Prejudice

Having demonstrated defective performance by counsel, Singleton must now establish that there is a reasonable probability that, but for counsel's unprofessional errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill,* 474 U.S. at 59 (1985). According to

10

the Supreme Court, " in many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Id.*

In this case, Singleton testified that he would not have pled guilty and would have persisted in taking his case to trial if he had known the facts that he now knows. For instance, he indicated that had he known that the career offender statute applied to him, he would not have plead guilty.[4] However, "a mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice." *United States v. Cieslowski,* 410 F.3d 353, 358-59 (7th Cir.2005).
But here, the court has more than just a "mere allegation" and a finding of prejudice is compelled by the record of what occurred after Singleton requested new counsel.

The veracity of Singleton's assertion that he would have taken the case to trial is buttressed by the vigorous manner with which he has pursued to withdraw his guilty plea since receiving new counsel. Singleton has filed two motions to withdraw his plea and even after being provided, at this court's request, with a summary of his potential sentence exposure if he is permitted to withdraw his plea, proceeds to trial and is convicted on all counts, Singleton has persisted in his request to

---

[4] Singleton also believed that if he did not plead guilty, the government was going to charge his girlfriend with crimes stemming from the arrest. The Government has indicated that it did not threaten to charge Singleton's girlfriend nor did it intend to. To the extent Singleton was told, as he claims he was, by counsel that the Government intended to charge his girlfriend if he did not plead guilty, it is clear that this information contributed to his decision to plead guilty rather than go to trial.

11

withdraw his plea. Indeed, Singleton could face as much as life imprisonment under the worst case scenario and his persistence in the face of such potential demonstrates undoubtedly that he would have proceeded to trial and not plead guilty had counsel rendered competent advice. Such a disparity between the sentence he faces under the current plea agreement (188 months) and the potential exposure to Singleton if he proceeds to trial (life imprisonment) provides additional credibility to Singleton's contention that he would have gone to trial despite the "break" he received by pleading guilty. See *Wieland v. Buss,* 185 Fed.Appx. 527, 530, 2006 WL 1687674, **2 (7th Cir. 2006) ("And we have previously accepted a comparable disparity between perceived and actual sentencing as a means to show prejudice under *Strickland.*"). Accordingly, the court concludes that Singleton has adequately demonstrated prejudice from counsel's deficient performance.

As noted at the outset, Singleton may withdraw his guilty plea if he demonstrates a "fair and just" reason. A "fair and just" reason for withdrawing a plea is where that plea was not voluntarily made due to ineffective assistance of counsel. *Carroll*, 412 F.3d at 793. In this case, the court concludes that Singleton has set out a "fair and just" reason so as to permit withdrawal of his guilty plea.

One final note. The court would be remiss if it failed to mention that Singleton did stand before a judicial officer and state that he understood the terms of the plea agreement, was satisfied with his counsel's representation, was not threatened or forced to plead guilty in any way, and that he was voluntarily entering into the plea of guilty. "A defendant who seeks to withdraw his guilty plea by contradicting his statements made under oath at his Rule 11 hearing "'faces a heavy burden of persuasion' to show that his plea was not knowing and voluntary. *United States v. Logan,* 244 F.3d 553, 558 (7th Cir.2001). By pleading guilty and making sworn statements in court, Singleton

12

placed himself in the difficult posture of having to recant those statements presently and, by doing so, subjecting himself to the potential of perjury charges. A plea of guilty is a "grave and solemn act" *United States v. Ellison,* 798 F.2d 1102, 1106 (7th Cir.1986), and this court does not lightly disregard that process. Indeed, "[e]ntry of a plea of guilty is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard." *United States v. Stewart,* 198 F.3d 984, 987 (7th Cir.1999). That said, under the facts of this case, the court concludes that Singleton's plea was rendered involuntary due to the ineffective assistance of counsel he received prior to the entry of the guilty plea.

## **CONCLUSION**

Based on the foregoing, Singleton's Motion to Withdraw his Guilty Plea is GRANTED.

Entered: This 20th day of February, 2007.

s/ William C. Lee
United States District Court
Northern District of Indiana
