UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:05-CR-51 |
| | ) | |
| EUGENE SINGLETON | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Presently before the court is the Government's "Motion for Reconsideration" filed on February 26, 2007 seeking reconsideration of this court's February 20, 2007 Opinion and Order granting Defendant's Second Motion to Withdraw Guilty Plea. The Defendant responded on February 28, 2007 to which the Government replied on March 2, 2007. Thereafter, on March 20, 2007 the court held a status conference wherein the undersigned set a motion hearing for April 20, 2007. At the conclusion of that hearing, the court ordered the parties to file supplemental briefs in support of their respective positions. The final brief was filed on August 20, 2007. For the following reasons, the Government's Motion will be GRANTED and the prior order granting Singleton's Motion to Withdraw his guilty plea will be VACATED. This cause will proceed to sentencing on the basis of the guilty plea.

## FACTUAL BACKGROUND

In 2004, a federal jury convicted Singleton of possession of cocaine base "crack" and the undersigned imposed a sentence of 21 months. (*See United States v. Singleton*, 1:03-CR-43). After serving the majority of his sentence, the Bureau of Prisons (BOP) assigned Singleton to PACT

1

BRADLEY, a half-way house facility located in Michigan City, Indiana.  Nine days before his scheduled release from that facility, Singleton left and did not return.  After a warrant was issued for his arrest, Singleton was arrested in a hotel room in New Haven, Indiana.  In the hotel room where Singleton was arrested were controlled substances including cocaine base "crack," marijuana, and oxycodone pills, as well as drug paraphernalia and guns.  Subsequent to his arrest, a federal grand jury indicted Singleton on charges of escape, 18 U.S.C. §751; possession with intent to distribute controlled substances including more than 5 grams of crack cocaine, 21 U.S.C. §841; and felon in possession of a firearm, 18 U.S.C. §922(g)(1).

On October 20, 2005, Singleton pled guilty pursuant to a written plea agreement ("the Agreement") to Count 2.  Singleton's change of plea was entered on the record in open court before Magistrate Judge Roger Cosbey pursuant to a Fed.R.Cr.P. 11 colloquy.  In the Agreement, Singleton agreed to plead guilty to count 2 in exchange for the Government's agreement to (1) dismiss the remaining counts at the time of sentence; (2) recommend the low-end of the advisory guideline range; (3) forego the filing of a §851 enhancement based upon Singleton's prior felony drug conviction; and (4) recommend that Singleton receive acceptance of responsibility deductions.  The Agreement also specifically provides that the amount of cocaine base "crack" was more than 5 grams but less than 50.  Paragraph 7 of the Agreement sets forth the maximum term of imprisonment for the offense, in this case, 5 to 40 years imprisonment and the maximum supervised release term.  The Agreement expressly states: "defendant also understands that no one can predict the precise sentence that will be imposed, and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for his offense(s) as set forth in this Plea Agreement." (Plea Agreement, ¶12(e)).

2

A review of the transcript of the plea hearing further demonstrates that Singleton was advised of the nature of the charges against him, his constitutional rights to a trial by jury (which he agreed to waive), as well as the statutory penalties for the offense to which he was pleading guilty. (Tr. Plea Hearing, pp. 14-16). As to the voluntary and knowing nature of the plea, the Magistrate questioned Singleton in detail about the substance of the Agreement and Singleton's knowledge of the terms of the Agreement. (*Id.* at 16-19).

In light of Singleton's answers to the colloquy, the Magistrate entered a report and recommendation recommending that a judgment of guilty be entered on the plea. On November 8, 2005, the undersigned entered an Order Adopting the Report and Recommendations (Docket #30) and accepting the plea of guilty to Count 2. At the sentencing hearing, Singleton expressed dissatisfaction with his counsel, William Lebrato ("Lebrato") and Lebrato moved to withdraw from the case. Thereafter, new counsel was appointed and Singleton filed his first motion to withdraw his guilty plea.

In his initial motion, Singleton asserted that because Lebrato predicted that his sentence pursuant to the plea agreement would be 92 months when, in fact, Singleton has been classified as a career offender facing a substantially higher sentence of 188 to 235 months, he should be permitted to withdraw his guilty plea. After review of the guilty plea transcript as well as the applicable case law, this Court concluded that even assuming Singleton's counsel erred in predicting his sentence, Singleton was made aware in both the plea agreement and during the plea colloquy that his sentencing exposure could reach up to the maximum possible punishment under the law.

Singleton then filed a second motion asserting that he received ineffective assistance of

3

counsel prior to pleading guilty.[1] At the first evidentiary hearing, the only evidence presented was the testimony of Singleton who described the events leading up to his guilty plea as follows: Singleton first met Lebrato at his Initial Appearance on August 10, 2005. (Tr. Evidentiary Hearing, p. 7). On that day, Singleton told Lebrato that he did not think the police had probable cause to search the hotel room and asked Lebrato to look into it. (*Id.* at 8). There was no further communication between Lebrato and Singleton until the Arraignment on August 23, 2005. (*Id.* at 8). There, Lebrato spoke to Singleton about the probable cause issue and indicated the police did not need probable cause to search the hotel room because Singleton's girlfriend, who was in the room when Singleton was arrested, had consented to the search. (*Id.* at 8). Singleton advised Lebrato that his girlfriend did not consent to the search and gave Lebrato her address and telephone number to investigate. (*Id.* at 8). Lebrato never spoke with Singleton's girlfriend nor did he file any pretrial motions on Singleton's behalf. (*Id.* at 13, 16).

Singleton testified that Lebrato never contacted him between the Arraignment, August 23, 2005, and the Pretrial Conference held on October 18, 2005. (*Id.* at 9). At the Pretrial Conference, Lebrato placed the Plea Agreement in front of Singleton, briefly explained it, and told Singleton he could plead guilty that same day. (*Id.* at 9, 14). Singleton hesitated because he had not seen his discovery. (*Id.* at 10). Lebrato mentioned that the Government may charge Singleton's girlfriend if he did not plead guilty. (*Id.* at 15). Still, Singleton was not comfortable pleading guilty that day so the Magistrate continued the proceedings until October 20, 2005. (*Id.* at 11).

---

[1] The Court requested the Probation Department to prepare a summary of the sentence Singleton could potentially receive if he succeeds with this motion, proceeds to trial, and is convicted. Singleton was advised at the evidentiary hearing that his potential exposure is 360 months to life. The Court then gave Singleton time to review his potential exposure, consult with his attorney, and decide whether to proceed with this motion. Singleton decided to proceed.

On October 19, 2005 Singleton received a letter dated that same day from Lebrato explaining the impact of the plea agreement. (*Id.* at 11). It stated that Singleton would have to serve a minimum of 92 months but not more than 115 months. (*Id.* at 15-16). Included with the letter was Singleton's discovery.[2] (*Id.* at 12). Singleton had approximately three hours to review his discovery at the jail before having to appear in court the next morning.[3] (*Id.* at 12).

Singleton appeared in court for his Change of Plea Hearing on October 20, 2005. (*Id.* at 13). Lebrato did not discuss the discovery material with Singleton at any time. (*Id.* at 13). Singleton did not want to plead guilty on October 20, 2005 because he did not have adequate time to consider his options, however, he pled guilty because he "didn't want to play with the Court's time." (*Id.* at 14).

On cross-examination by the Government, Singleton conceded that during the Rule 11 colloquy he represented that he was satisfied with his attorney's representation, he was not induced to plead guilty by any promises of a particular sentence, and no one threatened or forced him to plead guilty. (*Id.* at 20).

On the basis of the above record, the undersigned concluded that Lebrato had provided ineffective assistance of counsel primarily by failing to investigate a potentially exculpatory witness. The Government immediately filed its present motion seeking to overturn this decision and requested an evidentiary hearing wherein Lebrato would be given notice and an opportunity to defend himself against the allegations of unprofessional conduct. After some wrangling, the court agreed to hear the motion to reconsider and set the matter for hearing. At the hearing, Lebrato

---

[2] Singleton testified that he did not receive his discovery until he requested it in October 2005 even though the discovery was dated August 2005.

[3] Singleton testified that the mail was not distributed at the jail until 6:00 p.m. approximately three hours before lights out.

testified to the following:

Lebrato is a local Fort Wayne attorney practicing in the area of criminal defense and shares office space with other local practicing criminal defense attorneys. Lebrato is also an Allen County Public Defender who has been involved in the practice of law since November 1999. Since May 2000, Lebrato has been part of the federal CJA panel and has handled 6 or 7 federal appointments since that time.

With respect to Singleton's case, Lebrato testified that he visited Singleton at the jail on three occasions: October 15, 2005, October 16, 2005, for a total of one and a half hours, and again on October 19, 2005.[4] Lebrato testified that the visits on October 15 and 16 related to the plea hearing scheduled for October 18, 2005.

Lebrato further recounted a conversation he had with Singleton at the first court hearing on his charges: "[F]rom the first minute I met Mr. Singleton, the two most important things he conveyed to me were to resolve this as quickly as possible ... and to leave Latoya, his girlfriend...out of this. To do what I had to do to make sure she wasn't involved or charged in this matter whatsoever." (Tr. 2nd Hearing at 12). Lebrato indicated that he received Rule 16 discovery from the Government and that he discussed it with Lebrato at each court appearance. (Tr. 2nd Hearing at 15, 17). Lebrato explained that the public defender's office has a policy, which, in turn, has become his practice, of not providing copies of discovery to their clients in jail.

Lebrato testified that Singleton did, as Singleton testified, request that he contact Latoya Trotter to determine whether she gave consent to police officers to search the hotel room. (*Id.* at 17).

---

[4]To support his testimony Lebrato proffered his CJA voucher for reimbursement which provided an itemization of services he rendered to Singleton.

According to Lebrato, he contacted Ms. Trotter on August 22, 2005 and asked her whether she had given the officers consent to enter the room on the day of their arrest. (*Id.* at 18). In his notes, Lebrato noted the date and time (11:05 a.m.) of the call next to Ms. Trotter's name and telephone number and wrote "yes" in his file.[5]

Lebrato further recalled that the substance of his conversation with Ms. Trotter was that the officers took her aside and asked whether they could enter the room. Trotter told Lebrato that the officers informed her that they "could do this the hard way or the easy way." (*Id.* at Tr. 20-21). Given this statement by Trotter, Singleton's desire to resolve the matter quickly, and the generosity of the plea agreement, Lebrato testified that he believed it was in his client's best interests to accept the plea agreement. Lebrato further testified that he did not file a motion to suppress because even assuming Trotter did not give consent, there were issues of whether Singleton had standing to challenge the search of the hotel[6]; Singleton had an outstanding federal warrant at the time of his arrest giving rise to authority for the police to search the areas within his immediate control.

---

[5]Lebrato indicated he made a second call to Ms. Trotter on October 16, 2005, again which he noted in his file, and that this call was made to relay information to Ms. Trotter, at Singleton's request, regarding his upcoming trial date.

[6]As the defense points out there are authorities which indicate that an occupant in a hotel room has a reasonable expectation of privacy in the room even if they are an unregistered occupant. *See United States v. Carr,* 939 F.2d 1442, 1446 ("an overnight guest in a hotel room or in the home of a friend has a legitimate expectation of privacy in the premises."). The legitimacy of this case law is bolstered by the Supreme Court's recent decision in *Brendlin v. California* where the Supreme Court held that a passenger in a vehicle stopped by the police is seized by the stop within the meaning of the Fourth Amendment. 551 U.S. ___, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). As the Court in *Brendlin* explained, "[a] traffic stop necessarily curtails the travel a passenger has chosen just as much as it halts the driver..." 551 U.S. —, 127 S.Ct. At 2407. If a passenger is considered "seized" for Fourth Amendment purposes when a police officer makes a traffic stop, that passenger may then challenge the constitutionality of the actions taken during that stop. *Id.* at 2406-2407. Thus, a passenger has standing to challenge a constitutionally improper traffic stop, detention, or arrest on Fourth Amendment grounds. If a passenger in a vehicle has a reasonable expectation of privacy in a vehicle he does not own, extending standing to unregistered overnight occupants of a hotel room is not a legal stretch.

7

As noted in Singleton's testimony, the original plea hearing set on October 18, 2005 was continued until October 20, 2005 at Singleton's request. Lebrato testified that he visited Singleton at the jail on October 19, 2005 to obtain his signature on the plea agreement as well as to provide him with a letter he had written explaining the consequences of accepting the plea agreement and a copy of the discovery Singleton had requested. Singleton then pled guilty as noted in the facts above.

At the plea hearing, Singleton indicated that he had not been forced to plead guilty or threatened in any way to induce him into pleading guilty. Lebrato testified that he did discuss the potential exposure of Ms. Trotter to criminal charges if Singleton did not plead guilty. Lebrato was aware that Ms. Trotter had rented the room where the drugs and guns had been found in plain view. Lebrato informed Singleton of this fact because of Singleton's concern that his case be resolved without legal consequence to Ms. Trotter. Lebrato testified that he believed he was obligated to convey to Singleton this information prior to his guilty plea so that Singleton could make an informed decision.

Lebrato also acknowledged that while he had discussed the sentencing guidelines with Singleton prior to his guilty plea, he did not discuss the career offender guidelines as he was not aware that Singleton would be determined to be a career offender.

When questioned concerning his billing practices and/or file keeping, Lebrato explained that because of the salaried pay system for his public defender state court work, he did not maintain hourly billing records for services rendered in his appointed criminal cases. Further, Lebrato acknowledged that his "billing" system for his federal cases was constructed from his case notes in the file. Lebrato testified that he did not record his visit to the jail on October 19 to see Singleton

8

nor did he seek reimbursement on his CJA voucher for this visit.  He likewise noted that he did not seek reimbursement for his telephone call to Ms. Trotter.

**Latoya Trotter Testimony**

At the second hearing, Singleton called Ms. Trotter to refute the statements made by Lebrato that he contacted her and asked her whether she consented to the search.  Trotter testified that she told police that they could not enter the hotel room.  However, upon examination by the Court she testified as follows:

| | |
|---|---|
| COURT: | I didn't quite understand you testimony about what happened when the police officers came to the door of the room.  You said, I guess they asked you to, if they could come in, and you said no? |
| TROTTER: | Uh-huh. |
| COURT: | And you asked them, do I have to let you in.  They said no, so you said no.  How did they get in the room? |
| TROTTER: | They got into the room when I was arrested after I was placed in handcuffs. |
| COURT: | Well, I am still not following that.  They are at the door. |
| TROTTER: | Right. |
| COURT: | They knock on the door.  You go to the door? |
| TROTTER: | No, sir. |
| COURT: | Who went to the door? |
| TROTTER: | Eugene |
| COURT: | Okay.  Well, then when did they have the conversation with you? |
| TROTTER: | Actually, when I was getting out of my bed, I wasn't dressed.  So I asked them if I could, first I asked them if I could shut the door to get dressed.  They told me no.  I got dressed behind the blanket, then they were like, "Okay, we are coming inside to look around your room."  I said, "Do I have to let you?"  They said, "No."  Then I said, "Well, the answer is no."  When I was placed under arrest for harboring, that is when they came to the room and searched around. |
| COURT: | I see.  Okay. |

(Tr. 2nd Hrg. at 50-51).

Trotter further testified that Lebrato did not telephone her at any time nor did he leave her

9

any messages at the phone number (765) 287-1687.  Trotter testified that she knows he did not call her because she was "waiting for a telephone call." (*Id.* at 48)..

**Singleton's Testimony at the Second Hearing**

Singleton testified again that he only saw Lebrato at the jail on one occasion.  He further indicated that he received the discovery materials and a letter from Lebrato in the mail and that an investigator, not Lebrato, brought him the plea agreement at the jail for his signature on October 19, 2005. Singleton, consistent with Lebrato's testimony, indicated that he provided Trotter's telephone number to Lebrato and requested that Lebrato contact her to determine whether she consented to the search of the hotel room.  Singleton denied having told Lebrato that he wanted to resolve the matter quickly and that he wanted to keep his girlfriend out of it.

Based on these facts then, the court now proceeds to reconsider its previous order.

## DISCUSSION[7]

A defendant's right to withdraw a guilty plea is not absolute.  *United States v. Lundy,* 484 F.3d 480, 483 (7th Cir. 2007).  A court may allow a defendant to withdraw a guilty plea after it has been accepted, but before sentence is imposed if the defendant presents a "fair and just reason for requesting the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).  The burden is on the defendant to demonstrate a fair and just reason for plea withdrawal.  *United States v. Milquette*, 214 F.3d 859, 861 (7th Cir.2000).  "One 'fair and just' reason for withdrawing a plea is where that plea was not voluntarily made."  *United States v. Ellison*, 835 F.2d 687, 692-93 (7th Cir.1987).  Indeed,

---

[7] Singleton contends that there is no procedural vehicle through which the Government may file a motion to reconsider and thus, the Government's motion lacks authority.  However, a court may reconsider its own orders at any time and for any reason. *Smith v. Massachusetts*, 543 U.S. 462 (2005) (the court has the "inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment.").

10

"ineffective assistance of counsel can render a plea agreement involuntary, and is therefore a valid basis for withdrawing a guilty plea.

To establish ineffective assistance of counsel "[i]n the plea bargain context a defendant must establish that his counsel's performance was objectively unreasonable and that but for counsel's errors, he would not have pleaded guilty and instead gone to trial." *United States v. Martinez*, 169 F.3d 1049, 1053 (7th Cir.1999), citing *Hill v. Lockhart*, 474 U.S. 52, 56-60 (1985). To satisfy the performance prong, the defendant must point the court to specific acts or omissions which shape his claim. *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir.1995). "[E]ven if individual acts or omissions are not so grievous as to merit a finding of incompetence or of prejudice from incompetence, their cumulative effect may be substantial enough to meet the *Strickland* test." *Crisp v. Duckworth*, 743 F.2d 580, 583 (7th Cir.1984). Once a court has set out counsel's errors, "the court must then determine whether, in light of all the circumstances, the alleged acts or omissions were outside the wide range of professionally competent assistance." *Id.* The court must keep in mind the strong presumption that counsel's performance was reasonable while making this determination. *Id.*

As for the second prong of *Strickland* in the context of a guilty plea, a defendant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill,* 474 U.S. 52, 59 (1985). A mere allegation that the defendant would have insisted on going to trial is not enough to establish prejudice. *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir.2005).

In his original filing,   Singleton contended that he should be allowed to withdraw his guilty plea because Lebrato provided ineffective assistance prior to his guilty plea rendering the guilty plea

11

involuntary. Singleton based his claim of ineffective assistance of counsel primarily on the fact that the only communication between Singleton and Lebrato occurred in the courtroom prior to court proceedings and through one letter, and that Lebrato never investigated a motion to suppress the evidence found during the search of the hotel room. Singleton also supported his motion to withdraw his guilty plea with three additional facts: (1) Lebrato falsely promised Singleton that his federal sentence would be between 92 and 115 months when, in reality, he is a career offender facing 188 months at the low-end of the guideline range, (2) Singleton received his discovery on October 19, 2005 even though it was dated in August 2005, and he only had three hours to review it, and (3) Singleton believed if he did not take the plea, his girlfriend would be charged.

Of these contentions, the court originally concluded that while many errors were alleged the only allegation that had some teeth was the allegation that Lebrato failed to investigate facts supporting a motion to suppress. Indeed, this court concluded that *on the basis of the record before it at that time*, this was perhaps the most serious of the errors alleged to have been committed and that the cumulative effect of Lebrato's errors, including his lack of contact with Singleton and his failure to investigate the facts provided by Singleton as to the search of the hotel room constituted ineffective assistance of counsel rendering his guilty plea involuntary. The Government now argues that the court should consider evidence of Lebrato's testimony from the second hearing, find it credible, and overturn the original decision that was made without the benefit of Lebrato's testimony.

**Performance**

As indicated above, the court concluded that counsel's performance was deficient because ***the undisputed evidence***, i.e., Singleton's testimony, established that counsel failed to investigate

12

a witness that could potentially establish the basis for a motion to suppress. What the court credited at that hearing was his testimony that he had no knowledge that Lebrato contacted Trotter and that his conversations with Trotter confirmed to him that Lebrato did not contact her. Further, Singleton testified that Lebrato did not inform him at any time that he had investigated the consent issue and determined it would not support a motion to suppress. During the second hearing, Lebrato testified that he did contact Latoya Trotter and that she confirmed that she had provided consent for the officers to enter the hotel room.

Having now had the ability to view the demeanor of all the witnesses and judge their credibility, the court concludes that Lebrato's testimony is the most credible of the witnesses that testified in this case. First, Lebrato's file notes reflect that he did, in fact, call Trotter and ask her whether she gave consent. While these notes do not document the details of the telephone conversation, they at least acknowledge that a telephone call was made and that a response was received from Ms. Trotter.

Second, Singleton does not have any firsthand knowledge that Lebrato did not contact Trotter. Rather, he had the say-so of Trotter who was not the most convincing of witnesses at the second hearing. Moreover, even if this court credits Trotter's testimony, it does not aid Singleton in establishing that he had a meritorious motion to suppress. "When the claim of ineffective assistance is based on counsel's failure to present a motion to suppress, we have required that a defendant prove the motion was meritorious." *United States v. Cieslowski,* 410 F.3d 353, 360 (7th Cir.2005) ( (coll. cases), *cert. denied,* 546 U.S. 1097 (2006). Such a showing would speak to both prongs of the ineffectiveness claim: it would demonstrate that the failure to file a motion to suppress was objectively unreasonable; and it would supply partial proof of prejudice, by establishing that

13

the a suppression motion would have removed evidence found in the hotel room from Singleton's case. *See Gilbert v. Merchant* 488 F.3d 780, 790 -791 (7th Cir. 2007).

Trotter clearly testified that the officers only searched the hotel room **after** she was placed under arrest for harboring a fugitive. And, a limited warrantless search of a motel room incident to the lawful arrest of its occupants is permissible. "A lawful custodial arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested and of the area immediately surrounding the arrestee." *United States v. Marquez,* 687 F.2d 328, 330 (10th Cir. 1982); see also *United States v. Robinson*, 414 U.S. 218, 224 (1973)("It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment. This general exception has historically been formulated into two distinct propositions. The first is that a search may be made of the person of the arrestee by virtue of the lawful arrest. The second is that a search may be made of the area within the control of the arrestee."). Based on Trotter's testimony, officers clearly were entitled to search the hotel room incident to the arrest of both occupants. Thus, even if the court credited Trotter's statement that she had not received a telephone call from Lebrato asking about consent, Singleton cannot demonstrate that the filing of a motion to suppress would have benefitted him in any way. Therefore, Singleton has not demonstrated professional error in Lebrato's decision not to file a motion to suppress.

Moreover, "a decision not to file a suppression motion can be tactical, and there are plausible reasons (a belief that such a motion has no chance for success is one) why counsel acted as he did." *United States v. Malone,* 484 F.3d 916, 920 (7th Cir. 2007). At the first hearing there was not a shred of evidence suggesting that Lebrato's decision not to file a motion to suppress was a tactical decision. In fact, the undersigned had before it no evidence that Lebrato had even considered the

14

*possibility* of filing a motion to suppress and the Government relied solely on case law indicating that the court may presume that counsel is effective to support its proposition that Lebrato had made a strategic decision. *See United States v. Farr,* 297 F.3d 651, 658 (7th Cir.2002). However, at the second hearing this court was presented with concrete evidence to bolster the presumption that counsel was effective. Lebrato testified credibly that after he contacted Trotter he believed that a motion to suppress was not warranted, that other factors such as standing and the arrest warrant also could provide hurdles to a suppression motion and that Singleton's best outcome was through a plea agreement. And these reasons cannot be deemed inappropriate on the basis of this new record. *Id.* (*"*Trial tactics are a matter of professional judgment, and as we first observed in *Harris v. Reed,* 894 F.2d 871, 877 (7th Cir.1990), and continued to acknowledge in several cases since, we will not play "Monday morning quarterback" when reviewing claims that an attorney rendered constitutionally deficient representation in making decisions on how best to handle a case."). Again, on the basis of this record, the court cannot conclude that Lebrato's professional judgment was lacking.[8]

All this said, it is also critical for the court to remind Singleton that he did stand before a judicial officer and state that he understood the terms of the plea agreement, was satisfied with his counsel's representation, was not threatened or forced to plead guilty in any way, and that he was voluntarily entering into the plea of guilty. "A defendant who seeks to withdraw his guilty plea by contradicting his statements made under oath at his Rule 11 hearing "'faces a heavy burden of persuasion' to show that his plea was not knowing and voluntary. *United States v. Logan,* 244 F.3d 553, 558 (7th Cir.2001). A plea of guilty is a "grave and solemn act" *United States v. Ellison,* 798

---

[8]Singleton made other claims of defective performance by Lebrato, but those claims, even if true, do not alone or in combination support an ineffective assistance of counsel claim. Thus, those claims are not addressed in detail here.

15

F.2d 1102, 1106 (7th Cir.1986), and this court does not lightly disregard that process. Indeed, "[e]ntry of a plea of guilty is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard." *United States v. Stewart,* 198 F.3d 984, 987 (7th Cir.1999). If Singleton had doubts about his counsel's performance at the time of his guilty plea, he should have said so and not pled guilty. He did not. And now, on the basis, of the record developed at the second hearing, Singleton is bound to the terms of his plea agreement.

### Prejudice

Because Singleton has not demonstrated defective performance by counsel, the court is not required to determine whether Singleton was prejudiced by virtue of counsel's performance.[9] Accordingly, the Government's Motion is GRANTED and the plea agreement is hereby REINSTATED.

### CONCLUSION

Based on the foregoing, the Government's Motion to Reconsider the order granting Singleton's Motion to Withdraw his Guilty Plea is GRANTED. Singleton's guilty plea is hereby REINSTATED and the matter shall be set for sentencing by separate minute entry.

---

[9]Moreover, even if the court considered the prejudice prong, it still could not conclude in Singleton's favor, especially in light of the present record which demonstrates that a motion to suppress would have been futile. In fact, Singleton is hard-pressed to argue prejudice since his plea agreement provides substantial benefits to him that would not have been available to him if he had been permitted to withdraw his guilty plea and go to trial. The plea agreement limits Singleton's incarceration substantially to the exposure he would face as a career criminal and appears to this court to be both reasonable and generous under the circumstances. This is especially true given that throughout all of these proceedings, Singleton has never asserted that he is not guilty of the offenses for which he is charged – only that perhaps the evidence supporting the drug and gun charges should be suppressed, an argument which cannot be supported on the facts of the present record. That said, he has never asserted that he did not "escape" from the halfway house nor has he (or defense counsel) asserted actual innocence on the drug or gun charges.

16

Entered: This 26th day of September, 2007.

                                                          s/ William C. Lee
United States District Court
Northern District of Indiana

17